**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SHELTON THOMAS BELL,

      Petitioner,

vs.                                                          Case No.    3:16-cv-006-J-32JRK
                                                                          3:13-cr-141-J-32JRK

UNITED STATES OF AMERICA,

      Respondent.

_____

**ORDER**

    This case is before the Court on Petitioner Shelton Thomas Bell's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Civ. Doc. 1, Motion).[1] The United States has responded. (Civ. Doc. 6, Response). Petitioner also filed a motion for leave to amend (Civ. Doc. 16), which was largely denied (Civ. Doc. 21). To the extent leave to amend was granted, the United States indicated a further response was unnecessary. (Civ. Doc. 20 at 6). Thus, the Motion to Vacate is ripe for a decision.

    Under Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the petition. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are

---

[1]    Citations to the record in the underlying criminal case, United States vs. Shelton Thomas Bell, No. 3:13-cr-141-J-32JRK, will be denoted "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:16-cv-6-J-32JRK, will be denoted "Civ. Doc. __."

affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he alleges are true, he still would not be entitled to any relief). For the reasons set forth below, Petitioner's Motion to Vacate is due to be denied.

## I.    Background

Petitioner's case illustrates how the global war on terrorism can hit close to home. As a young man in Jacksonville, Florida, Petitioner came under the influence of Anwar al-Awlaki, an American-born cleric who preached a violent form of Islamic "jihad"[2] and who recruited young people to carry out attacks against Westerners. Between May 2012 and July 2013, Petitioner conspired with a juvenile and at least one other person to train for combat overseas, and to eventually travel to Yemen to join the terrorist group Ansar al-Sharia. (See Crim. Doc. 38 at 15). Petitioner and the juvenile hatched a plan where they would travel to Israel under the false pretense of visiting the juvenile's ailing grandmother. (Id. at 16). From Israel they planned to travel to Yemen to join Ansar al-Sharia and others engaged in combat. (Id.).

In July 2012, Petitioner, the juvenile, and another individual participated in "training" for jihad. The training included making and detonating home-made explosives, practicing with firearms in the woods, and vandalizing religious statues at a cemetery. (Id. at 16-19). In the course of doing so, Petitioner made several recordings

---

[2]    As noted in the sentencing order, "[t]he more common and accepted understanding of jihad among Muslims is as the 'internal struggle' to be a better, more pious Muslim." (Crim. Doc. 91 at 5 n.2) (citation omitted). However, "jihad" can have a militaristic meaning as well, including the extreme version espoused by Osama bin Laden, which "involves an offensive component of preemptively defending Islam through violent attacks against the supposed enemies of Islam wherever they might be found in the world." (Id.) (citation omitted).

2

of himself where he echoed al-Awlaki's message of violent jihad.

In September 2012, Petitioner and the juvenile secured passports and plane tickets and flew from Jacksonville to Tel Aviv, Israel. (Id. at 20). Israeli officials detained the two and deported them to Poland. (Id.). Undeterred, Petitioner and the juvenile traveled from Poland to Jordan to stay with the juvenile's relatives. (Id.). To avoid detection by law enforcement, Petitioner and the juvenile agreed to make up a cover story to conceal their intentions. (Id. at 19-20). While in Jordan, Petitioner and the juvenile contacted a person to assist them with making their way to Yemen. (Id. at 20). Petitioner and the juvenile bought plane tickets to Oman, believing they would then walk across the Yemeni border. (Id.). In November 2012, however, before they could depart for Oman, Jordanian authorities deported Petitioner and the juvenile to the United States. Upon his return to the United States, Petitioner gave a non-custodial statement to a Customs and Border Protection agent, in which he confirmed it had been his intention to fight "for whatever group was fighting against those who were persecuting Muslims," and specifically that he had planned to join Ansar al-Sharia. (Id. at 21).

Petitioner did not cease his efforts to promote jihad after his return to the United States. In some intercepted phone calls, Petitioner told his associates that he had "substantial stuff" planned for Jacksonville, including building his own mosque in the woods by his father's house so he could continue to preach violent jihad to young people. (Crim. Doc. 91 at 10). Petitioner conceived of ways to finance his activities, including by fraudulently obtaining food stamps at a false address. (Id.). In January

2013, Petitioner was arrested by the Jacksonville Sheriff's Office on unrelated state charges. During a brief exchange with a Muslim sheriff's detective, Petitioner called the detective "Taghut," or disbeliever, told the detective that he represented the "wrong law," and informed the detective that he had traveled overseas to become a soldier. (Crim. Doc. 83 at 97-98).

Several months later, in July 2013, a grand jury indicted Petitioner on one count of conspiracy to provide material support to terrorists (Count One) and one count of attempting to provide material support to terrorists (Count Two), both in violation of 18 U.S.C. § 2339A. (Crim. Doc. 1, Indictment). On March 19, 2014, Petitioner pled guilty to both charges under a written plea agreement. (Crim. Doc. 38, Plea Agreement); (Crim. Doc. 99, Plea Transcript). After an extended sentencing hearing that occurred over the course of three days, in which the Court heard testimony and argument from both sides, the Court sentenced Petitioner to a total term of 20 years in prison. (Crim. Doc. 93, Judgment). The sentence consisted of the maximum term of 15 years as to Count One followed by a consecutive term of 5 years as to Count Two. (Id.). The Court issued a written opinion explaining its sentencing decision in detail. United States v. Bell, 81 F. Supp. 3d 1301 (M.D. Fla. 2015); (Crim. Doc. 91, Sentencing Order). Petitioner did not file a notice of appeal.

## II.    The Motion to Vacate

Petitioner filed a timely § 2255 motion on December 15, 2015. (See Civ. Doc. 1 at 13). In the Motion, Petitioner raises the following claims: (Ground One) trial counsel gave ineffective assistance by (a) "coercing" him to avoid cooperating with the

4

government; (b) failing to advise him that he could have received a downward departure if he cooperated; (c) "coercing" him to plead guilty by stating he would be sentenced to life in prison if he went to trial and lost; (d) not advising Petitioner that he could enter a plea of "nolo contendere"; (e) not reviewing Petitioner's sentencing memorandum with him; and (f) not presenting the family character witnesses Petitioner wanted to put forth (Civ. Doc. 1 at 4); (Ground Two) there was an unwarranted disparity between his sentence and that of his co-defendant (id. at 5-6); (Ground Three) Petitioner's conviction and sentence violated the Ex Post Facto Clause because Ansar al-Sharia – the group he tried to join – was not designated as a Foreign Terrorist Organization at the time of the offense conduct (id. at 7); and (Ground Four) Counts One and Two of the indictment were multiplicitous, and the imposition of consecutive sentences violated 18 U.S.C. § 3584 (id. at 8).

Later, the Court allowed Petitioner to amend Ground One to the extent he added allegations that counsel generally failed to investigate what information he could have provided the government, "induced [him] to believe there was no opportunity to cooperate, and that [he] would receive the same sentence whether [he] cooperated or not." (Civ. Doc. 16 at 2-3; Civ. Doc. 21 at 6).

The United States responds that Petitioner's claims are either meritless, refuted by the record, or procedurally defaulted. (Civ. Doc. 6). With respect to the amendment to Ground One, the United States indicates it will stand on the arguments in its original response. (Civ. Doc. 20 at 6).

### III.    Discussion

Under Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack.  28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack.  United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both (1) that counsel's performance was deficient, and (2) that as a result of counsel's deficient performance, the petitioner suffered prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). In determining whether counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Id. To show that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable

6

probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Id. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

### A. Ground One: Ineffective Assistance of Counsel

#### 1. Whether counsel misadvised or coerced Petitioner into not cooperating

Petitioner's first two sub-claims of ineffective assistance are that his federal public defender (a) coerced him into not cooperating with the government and (b) failed to advise him that he could receive a downward departure if he cooperated. (See Civ. Doc. 1 at 4). Petitioner amended this claim to add that counsel allegedly failed to investigate what information he could have provided the government, and that counsel led him to believe there was neither any opportunity to cooperate nor any benefit to doing so. (See Civ. Doc. 16 at 2-3).

The record refutes these claims. Petitioner's counsel discussed the issue of cooperation at the sentencing hearing in Petitioner's presence:

> The cooperation issue – at the point that Mr. Bell was indicted and then charged, the juvenile [accomplice] had been interviewed at least four times. The others – there are some other persons who are being interviewed.
>
> And a review between myself and Mr. Bell – it didn't look like there was any significant information that he would be able to provide, because what the government was asking about was contacts overseas. And they already knew everything that Mr. Bell knew. So it just was not an issue of cooperation being something that we thought was advantageous to pursue.

(Crim. Doc. 83 at 219). Petitioner voiced no disagreement with counsel's explanation for why he did not cooperate. Given his turn to speak, Petitioner expressed remorse for his actions and claimed to have renounced the extremist views he once held. (Id. at 223-28).

The record above shows that counsel considered the possibility of Petitioner cooperating with the government, but that counsel and Petitioner made a joint decision that cooperation was not feasible. Petitioner could not offer any new information of interest to the government – i.e., information about Petitioner's overseas contacts – because the government already possessed whatever information Petitioner could provide. Neither Petitioner's Motion to Vacate nor his amendment suggest otherwise. Petitioner makes no effort to explain what new, useful information he could have provided the government. Petitioner also claims that counsel induced or coerced him into not cooperating and failed to advise him that cooperation could earn him a downward departure. However, this is belied by the record. Moreover, because Petitioner could not offer the government any helpful information, he would not have

8

qualified for a substantial assistance reduction under U.S.S.G. § 5K1.1 in any event.[3] As such, counsel's performance in connection with the issue of cooperation was neither deficient nor prejudicial. Relief on this claim is due to be denied.

### 2.  Whether counsel coerced Petitioner into pleading guilty

Petitioner's next subclaim of ineffective assistance is that counsel coerced him into pleading guilty by telling him that if he went to trial and lost, he would be sentenced to life in prison. The record refutes this claim as well.

To begin with, the government and the Court accurately advised Petitioner of the maximum potential sentence on several occasions. At his initial appearance, the United States informed Petitioner that the cumulative maximum sentence on Counts One and Two was 30 years in prison. (Crim. Doc. 98 at 9). Petitioner stated that he understood the potential sentence. (Id. at 10). The Plea Agreement informed Petitioner that the cumulative maximum sentence was 30 years in prison, and Petitioner indicated his understanding by putting his initials at the bottom of the page. (Crim. Doc. 38 at 2). Then, at the change of plea colloquy, the Court advised Petitioner again that the cumulative maximum sentence was 30 years in prison. (Crim. Doc. 99 at 20-21). Petitioner again stated that he understood the maximum penalty. (Id. at 21). "Thus, the record repeatedly refutes Bell's claim that he feared life in prison after trial." (Civ. Doc. 6 at 10).

---

[3]   There is also some indication that Petitioner would have been unwilling to provide incriminating information about his overseas contacts, because he told an agent "that he wouldn't talk about another Muslim without that person present." (Crim. Doc. 82 at 61).

Though there is no indication that counsel misadvised Petitioner about his maximum sentence, in any event, when a judge presiding over a plea colloquy correctly advises a defendant about the consequences of pleading guilty, the judge's advice tends to cure contrary advice by counsel. See e.g., United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007) ("Indeed, we have long held that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted.") (citations omitted); United States v. Wilson, 245 F. App'x 10, 12 (11th Cir. 2007) ("During the plea colloquy, the district court itself explained to Wilson—in detail—the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting Wilson's guilty plea. Thus, any failure on the part of Wilson's counsel to clearly explain the possible punishment was cured by the district court."). As such, the record shows that when Petitioner pled guilty, he did so knowing his maximum potential sentence was 30 years in prison, not life.[4]

The record further refutes any claim that counsel coerced Petitioner into pleading guilty using the threat of a lengthy sentence. The following exchange occurred during the plea colloquy:

> THE COURT: … Mr. Bell, is your plea made here today freely and voluntarily?
>
> DEFENDANT: Yes, sir, it was.

---

[4]   Even if counsel advised Petitioner that he could be sentenced to life in prison if he did not plead guilty, such advice would not have been necessarily unfounded. As the United States points out, had Petitioner not pled guilty, the government could have sought a superseding indictment charging Petitioner with conspiracy to commit murder overseas, which carries a potential sentence of life in prison, see 18 U.S.C. § 956(a)(2)(A). (Civ. Doc. 6 at 10).

THE COURT:        Is your plea of guilty your own independent decision?

DEFENDANT:        Yes.

THE COURT:        Has anyone threatened you, forced you, coerced you, or intimidated you in any way regarding your decision to plead guilty?

DEFENDANT:        No, sir.

THE COURT:        Has anyone made any promises or assurances to you of any kind to get you to plead guilty other than those stated in the plea agreement?

DEFENDANT:        No, sir.

THE COURT:        Are you relying on any agreement, promise or understanding with anyone concerning what sentence will be imposed if you plead guilty, other than what's stated in the plea agreement?

DEFENDANT:        No, sir.

THE COURT:        At this time, Mr. Bell, do you know specifically what sentence you will receive?

DEFENDANT:        No.

THE COURT:        Has anyone promised you that you will receive a light sentence or be otherwise rewarded by pleading guilty, other than what is stated in the plea agreement?

DEFENDANT:        No.

(Crim. Doc. 99 at 40-41). Thus, the record refutes any claim that counsel threatened Petitioner to plead guilty or else spend the rest of his life in prison.

Because a prisoner often "has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea," Blackledge v. Allison, 431 U.S. 63, 71-72 (1977), "the representations of the defendant, his lawyer, and the prosecutor at [a plea]

hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings," id. at 73-74. Indeed, "there is a strong presumption that the statements made during the plea colloquy are true." United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge, 431 U.S. at 74. A prisoner who has made statements at a plea colloquy "'bears a heavy burden to show his statements were false.'" Winthrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014) (citation omitted). Petitioner's generic allegation that counsel coerced him into pleading guilty falls far short of demonstrating that his sworn statements at the plea colloquy were untrue. Petitioner's sworn statements show that he knowingly pled guilty, free from any threats or coercion. As such, this subclaim does not merit relief.

### 3. Counsel's alleged failure to advise Petitioner he could plead "nolo contendere"

Petitioner claims that counsel gave ineffective assistance by failing to advise him that he could plead nolo contendere. The Court assumes for the sake of argument that counsel did not advise Petitioner of this option. To establish prejudice, Petitioner must show that but for counsel's deficiency, there is a reasonable probability he would not have pleaded guilty and instead would have entered a plea of nolo contendere. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). Petitioner has not made that showing.

A defendant does not have the right to plead nolo contendere. United States v. Fels, 599 F.2d 142, 148 n.4 (7th Cir. 1979); United States v. Dorman, 496 F.2d 438,

440 (4th Cir.), cert. denied 95 S. Ct. 214, 419 U.S. 945, 42 L.Ed.2d 168 (1974). Rather, a defendant may plead nolo contendere only with the Court's consent, Fed. R. Crim. P. 11(a)(1), and only after the Court has "consider[ed] the parties' views and the public interest in the effective administration of justice," Fed. R. Crim. P. 11(a)(3). Petitioner has not set forth any reasons why there is a reasonable likelihood the Court would have allowed Petitioner to plead nolo contendere. For its part, the United States insists that it "never would have assented to a nolo contendere plea by a terrorist like Bell, and the public's interest in the effective administration of justice would strongly militate against accepting a plea like that." (Civ. Doc. 6 at 11). Nor does Petitioner allege that he actually would have rejected the Plea Agreement in favor of a nolo contendere plea; he merely complains that counsel failed to advise him of the option. (See Civ. Doc. 1 at 4). Thus, Petitioner has not shown a reasonable probability that he would have rejected the Plea Agreement and entered a plea of nolo contendere in the first place.

Nor has Petitioner shown a reasonable probability that the conviction or sentence, or both, under a plea of nolo contendere "would have been less severe than under the judgment and sentence that in fact were imposed." Osley v. United States, 751 F.3d 1214, 1222 (11th Cir. 2014) (quoting Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012); citing Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012)). Rather, had Petitioner pled nolo contendere instead of accepting the Plea Agreement, he would not have received the United States' assurance that it would recommend an offense level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility. (See Crim. Doc. 38

13

at 4-5). And while a plea of nolo contendere might not automatically preclude a defendant from receiving an acceptance-of-responsibility reduction, such a plea might have jeopardized his eligibility by calling into doubt whether he "clearly demonstrate[d] acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Accordingly, Petitioner has not shown a reasonable probability that he would have received a lesser sentence had he pled nolo contendere. Counsel's failure to advise him of the option would not have been prejudicial, and relief on this claim is due to be denied.

### 4. Counsel's alleged failure to review the sentencing memorandum with Petitioner

Next, Petitioner claims that counsel gave ineffective assistance by not showing him the sentencing memorandum (Crim. Doc. 54) before counsel filed it on his behalf. (Civ. Doc. 1 at 4). Petitioner complains that counsel ignored certain arguments he wanted to present and that he "never had a chance to properly review [the] sentencing memorandum for mistakes." (Id.). However, Petitioner fails to identify what arguments he urged counsel to make at that time, let alone why his suggested arguments would have had merit. (See id.). Nor does Petitioner explain what mistakes were present in the sentencing memorandum. (Id.).

A petitioner is not entitled to habeas relief, or even an evidentiary hearing, when he makes vague and conclusory allegations such as those presented here. Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (explaining that a petitioner is not entitled to federal habeas relief "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly

incredible."). Petitioner's vague allegation fails to establish that counsel's performance was deficient or prejudicial. As such, relief on this subclaim is due to be denied.[5]

**5. Counsel's alleged failure to call family character witnesses at the sentencing hearing**

Petitioner's last allegation of ineffective assistance is that counsel failed to present character evidence from family members at the sentencing hearing. (Civ. Doc. 1 at 4). Petitioner claims he was "coerced to believe that my family character witnesses would only harm the outcome of my sentence, and my counsel never showed me letters my family wrote to the judge on my behalf. They were never admitted, against what I wanted." (Id.).

Like the previous subclaim, this allegation is vague and conclusory. Petitioner does not explain who purportedly wrote a letter or would have testified on his behalf, what that person said or would have said, or why there is a reasonable likelihood it would have resulted in a lower sentence. "Complaints of uncalled witnesses are not

---

[5]     In his Motion for Leave to Amend, Petitioner sought to add a claim that counsel was ineffective for failing to object to a terrorism sentencing enhancement under U.S.S.G. § 3A1.4. (Civ. Doc. 16 at 5-7). However, Petitioner did not connect this new claim with the allegations in Ground One by suggesting that this objection was among those he had urged counsel to make and which counsel ignored, or that this error somehow flowed from counsel's failure to show him the sentencing memorandum. (See Civ. Doc. 16 at 5-7). Nor did the original Motion to Vacate contain any claims about the Guidelines calculation. (Civ. Doc. 1 at 4). Thus, the Court found that this claim did not relate back to Ground One of the Motion to Vacate and denied leave to amend. (See Civ. Doc. 21).

Nevertheless, even had Petitioner successfully amended his Motion to Vacate to add this claim, he would not be entitled to relief. The § 3A1.4 enhancement properly applied for the reasons explained in the sentencing order. Bell, 81 F. Supp. 3d at 1311-12; (Crim. Doc. 91 at 13-15). As such, it was neither unreasonable nor prejudicial for counsel not to object to the enhancement.

favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir. 1978).[6] "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1511 (11th Cir. 1995). Therefore, "[e]ven if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." <u>Dingle v. Sec'y, Dep't of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007) (quotations omitted). Thus, "[t]he mere fact that other witnesses might have been available ... is not a sufficient ground to prove ineffectiveness of counsel." <u>Waters</u>, 46 F.3d at 1514.

Petitioner's conclusory allegation fails to overcome the strong presumption that experienced counsel made a reasonable decision about what evidence to present at the sentencing hearing. <u>See</u> <u>Tejada</u>, 941 F.2d at 1559. The allegation also fails to establish that he suffered prejudice. Accordingly, this final allegation of ineffective assistance lacks merit and relief is due to be denied.

**B. Ground Two: Unwarranted Sentencing Disparity**

Petitioner argues that there was an unwarranted disparity between his sentence and that of his co-defendant. (Civ. Doc. 1 at 5-6). In short, Petitioner believes he was equally or less culpable than his co-defendant, and therefore he should have

---

[6]     Decisions of the former Fifth Circuit Court of Appeals that were issued on or before the close of business on September 30, 1981 are binding in the Eleventh Circuit. <u>Bonner v. City of Prichard, Ala.</u>, 661 F.2d 1206, 1207 (11th Cir. 1981).

received a sentence comparable to what the co-defendant received, which Petitioner claims was three-and-a-half years of probation. (See id. at 6).

The Court rejected this claim when it explained in its sentencing order that Petitioner's co-defendant is not a good comparator for sentencing purposes. (Crim. Doc. 91 at 30-31). Most notably, the co-defendant was a juvenile and was sentenced as such whereas Petitioner was an adult. (Id.). Additionally, Petitioner led the juvenile into the conspiracy, not the other way around; the juvenile had no criminal record at the time of the offenses; and the juvenile did not participate in the "training" mission where Petitioner and another individual destroyed religious statues at a cemetery. (Id. at 31). As such, any difference between Petitioner's sentence and that of his juvenile co-defendant was not unwarranted under 18 U.S.C. § 3553(a)(6).

Additionally, Petitioner has procedurally defaulted this claim. "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011) (internal quotation omitted). A claim concerning an unwarranted sentencing disparity is properly the subject of a direct appeal.[7] As

---

[7]    While Petitioner waived the right to directly appeal his sentence (Crim. Doc. 38 at 8-9), a voluntary appeal-waiver is not a "cause" that can excuse a procedural default. Garcia-Santos v. United States, 273 F.3d 506, 508 (2d Cir. 2001) ("a waiver of appeal provision in a plea agreement d[oes] not constitute 'cause' for failing to take a direct appeal."); Giddens v. United States, No. 7:12-CV-90125, 2012 WL 6628411, at *2 (M.D. Ga. Nov. 28, 2012) (collecting cases); see also, e.g., Crawford v. United States, 501 F. App'x 943, 945 (11th Cir. 2012) (applying the procedural default doctrine to a claim that was also barred by an appeal-waiver).

such, Petitioner's failure to present this claim on appeal means he may not raise it for the first time in a § 2255 motion. See Marion v. United States, No. 16-15971-G, 2017 WL 8233896, at *7 (11th Cir. Oct. 24, 2017) (Carnes, Julie, J., denying certificate of appealability) (petitioner procedurally defaulted a direct challenge to the reasonableness of his sentence because he did not present it on direct appeal). Nor is this claim "cognizable in a § 2255 proceeding, as it fails to allege a constitutional violation." Id. (citing Spencer v. United States, 773 F.3d 1132, 1139 (11th Cir. 2014)). For each of these reasons, relief on Ground Two is due to be denied.

**C. Ground Three: Alleged Violation of the Ex Post Facto Clause**

In Ground Three, Petitioner argues that his conviction and sentence violate the Ex Post Facto Clause, U.S. Const., Art. I, § 9, cl. 3, which provides that "No Bill of Attainder or ex post facto Law shall be passed." Petitioner claims that his conviction and sentence violate the Ex Post Facto Clause because Ansar al-Sharia was not designated a Foreign Terrorist Organization ("FTO") until October 4, 2012 – "long after the conspiracy to join them began." (Civ. Doc. 1 at 7). Petitioner claims "I had no knowledge nor any possible way of knowing that Ansar al-Sharia was designated as an FTO before I left the country, nor did I know or have any possible way of knowing that I would be held criminally responsible for trying to join them." (Id.).

This claim fails for several reasons. First, the claim is procedurally defaulted because Petitioner did not raise it on direct appeal. See McKay, 657 F.3d at 1196. Second, the date when the State Department classified Ansar al-Sharia as an FTO is irrelevant. While an organization's status as an FTO is relevant to a violation of 18

18

U.S.C. § 2339B, Petitioner was charged under § 2339A, not § 2339B. An organization's status as an FTO is not an element of an offense under § 2339A. Rather, the elements of a violation of § 2339A are that the defendant (1) "provided material support or resources" (2) "with the knowledge or intent that" (3) "the support will be used 'in preparation for, or in carrying out' one of the subject offenses listed" in § 2339A. United States v. Hassoun, 476 F.3d 1181, 1188 (11th Cir. 2007). Petitioner admitted to each of these elements when he pled guilty to conspiracy and attempt to violate § 2339A. (Crim. Doc. 38 at 13-14; Crim. Doc. 99 at 18-20, 38-40). Because none of the elements of § 2339A requires that the defendant support a designated FTO, the date when Ansar al-Sharia was classified as such is irrelevant. Finally, even if Ansar al-Sharia's status as an FTO was relevant under § 2339A, Petitioner would be entitled to no relief because (a) Ansar al-Sharia was merely an alias of Al-Qaeda in the Arabian Peninsula (AQAP), which had been designated an FTO since January 19, 2010 (before the offense conduct began), and (b) Petitioner continued his conspiracy and attempt to join Ansar al-Sharia even after it was designated an FTO on October 4, 2012. (See Civ. Doc. 6 at 16); (see also Crim. Doc. 38 at 20-21) (reflecting that Petitioner and his co-defendant remained in Jordan and continued plans to join Ansar al-Sharia in October and November 2012). As such, Ground Three lacks merit and Petitioner is entitled to no relief on this claim.

## D. Ground Four: Alleged Double Jeopardy Violation

Finally, Petitioner claims in Ground Four that Count One and Count Two of the indictment are multiplicitous. (Civ. Doc. 1 at 8). Petitioner argues that being convicted

and sentenced both for conspiring to violate 18 U.S.C. § 2339A and for attempting to do so punishes him twice for the same offense, contrary to the Double Jeopardy Clause. He also argues that the imposition of consecutive sentences for the conspiracy and attempt charges violates 18 U.S.C. § 3584. (Id.). That statute provides in pertinent part:

> If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt….

18 U.S.C. § 3584(a) (emphasis added).

The Double Jeopardy and § 3584 claims fail for several reasons. First, Petitioner procedurally defaulted these claims because he did not present them on direct appeal. See McKay, 657 F.3d at 1196. Second, the claims fail on the merits as well. Petitioner's sentence for both conspiracy and attempt does not offend the Double Jeopardy Clause. The Eleventh Circuit has explained that conspiracy and attempt are different

> because conspiracy requires proof of an agreement between two or more people, while attempt does not; attempt requires proof that a substantial step has been taken towards completion of the crime, while conspiracy does not. United States v. Corley, 824 F.2d 931, 936 (11th Cir. 1987); United States v. Forbrich, 758 F.2d 555, 557 (11th Cir. 1985). Although conspiracy also requires proof of an overt act that furthers the criminal venture, the overt act may be otherwise innocuous and need not pose any danger to society or the intended victim of the conspiracy. United States v. Alvarez, 610 F.2d 1250, 1255 n. 5 (5th Cir.), rev'd on other grounds, 625 F.2d 1196 (5th Cir.1980) (en banc), cert. denied, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981). In contrast, a "substantial step" towards a criminal attempt usually poses a direct threat to interests protected by law. Id., 610 F.2d at 1254 n. 3.

United States v. Howard, 918 F.2d 1529, 1533 (11th Cir. 1990). As such, conspiracy

20

and attempt are distinct offenses, such that Petitioner's sentence for both does not violate the Double Jeopardy Clause.

Petitioner's claim that his sentence violates § 3584 likewise lacks merit. "Congress has not prohibited consecutive sentences for attempts and conspiracies that have the same object." United States v. Rahman, 189 F.3d 88, 158 n.36 (2d Cir. 1999). Congress only prohibited consecutive sentences "for an attempt and for another offense that was the sole objective of the attempt." 18 U.S.C. § 3584(a). As the United States points out, "[h]ere, Bell has not been sentenced for an attempt to violate 2339A and an actual violation of 2339A. Instead, Bell has been sentenced for conspiring to violate 2339A and the separate offense of attempting to do so." (Civ. Doc. 6 at 19). And as the Eleventh Circuit has confirmed, conspiracy and attempt are distinct offenses. Howard, 918 F.2d at 1533. Therefore, the Court had authority under § 3584(a) to impose consecutive sentences on Counts One and Two. As such, the claims in Ground Four lack merit and relief is due to be denied.

### E. Petitioner's "Response to Court's Order"

On February 7, 2017, Petitioner filed a "Response to Court's Order" (Civ. Doc. 22), in which he suggests the Court erred to the extent it denied his Motion for Leave to Amend (see Civ. Doc. 16; Civ. Doc. 21). Petitioner also asserts he is entitled to equitable tolling concerning the claim in his Motion for Leave to Amend that counsel failed to file a requested appeal. (Civ. Doc. 22 at 4). Petitioner claims he is entitled to equitable tolling because he "was constantly placed in administration [sic] segregation and transferred to several institutions throughout the year in which I had to file. The

21

result of such circumstances resulted in long-term denial to the prisons [sic] legal resources and personal legal materials, ultimately depriving me of equitable tolling [sic]." (Id.). The Court construes the "response" as an objection to the magistrate judge's order (Civ. Doc. 21) on Petitioner's Motion for Leave to Amend.

After examining each of the claims in the Motion for Leave to Amend, the magistrate judge ruled that Petitioner was entitled to amend the Motion to Vacate only to the extent he expanded his allegation that counsel failed to properly investigate or advise Petitioner regarding opportunities to cooperate with the government. (Id. at 1-6). The magistrate judge denied the remainder of the Motion for Leave to Amend because he determined that the other claims were untimely and did not relate back to the original Motion to Vacate. (Id. at 6-8). The magistrate judge did not address whether Petitioner was entitled to equitable tolling because Petitioner did not assert equitable tolling, either in the Motion for Leave to Amend (Civ. Doc. 16 at 7-8) or the contemporaneously-filed affidavit (Civ. Doc. 17). Rather, Petitioner relied entirely on the relation-back doctrine. (See Civ. Doc. 16 at 1).

Because the magistrate judge's order denying the Motion for Leave to Amend is non-dispositive, Palmore v. Hicks, 383 F. App'x 897, 900 (11th Cir. 2010), to prevail, Petitioner must establish that the conclusions he objects to are clearly erroneous or contrary to law, Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). See also Merritt v. Int'l Bhd. of Boilermakers, 649 F.2d 1013, 1016-17 (5th Cir. Unit A June 1981). "Clear error is a highly deferential standard of review." Holton v. City of Thomasville Sch. Dist., 425 F.3d 1325, 1350 (11th Cir. 2005) (citation omitted). "[A] finding is 'clearly

erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. (citations and quotations omitted); see also Weeks v. Samsung Heavy Indus. Co., Ltd., 126 F.3d 926, 943 (7th Cir. 1997) ("The clear error standard [under Rule 72(a) and 28 U.S.C. § 636(b)(1)(A)] means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made."). A magistrate judge's order "is contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" Botta v. Barnhart, 475 F. Supp. 2d 174, 185 (E.D.N.Y. 2007) (quoting Catskill Dev., LLC v. Park Place Entm't Corp., 206 F.R.D. 78, 86 (S.D.N.Y. 2002)); see also Pigott v. Sanibel Dev., LLC, Civil Action No. 07-0083-WS-C, 2008 WL 2937804, at *5 (S.D. Ala. July 23, 2008) (similar) (citation omitted). In short, "[t]he standard for overturning a Magistrate Judge's Order is a very difficult one to meet." Nat'l Ass'n for Advancement of Colored People v. Fla. Dep't of Corr., 122 F. Supp. 2d 1335, 1337 (M.D. Fla. 2000).

After review of the magistrate judge's order denying the Motion for Leave to Amend, the order was not clearly erroneous or contrary to law. There is no indication that the magistrate judge misapprehended the arguments or the facts. The magistrate judge correctly identified the relevant law and applied that law to the Motion for Leave to Amend. Therefore, the Court is not persuaded that the magistrate judge committed a mistake or "'fail[ed] to apply or misapplie[d] relevant statutes, case law, or rules of procedure.'" Botta, 475 F. Supp. 2d at 185.

Turning to Petitioner's claim that he is entitled to equitable tolling, a party is not entitled to raise an argument for the first time in an objection to a magistrate judge's order. Williams v. McNeil, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge."). Nevertheless, the Court has the discretion to consider the argument anyway. Stephens v. Tolbert, 471 F.3d 1173, 1176 (11th Cir. 2006). Even considering the argument, Petitioner is not entitled to equitable tolling because the Eleventh Circuit has held that neither lack of access to a law library nor periods of time in which the prisoner is separated from his legal materials constitute an extraordinary circumstance warranting equitable tolling. See Dodd v. United States, 365 F.3d 1273, 1283 (11th Cir. 2004) ("[L]ockdowns and periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate."); Echemendia v. United States, 710 F. App'x 823, 827 (11th Cir. 2017) ("[A] transfer between prisons is not an extraordinary circumstance."); Paulcin v. McDonough, 259 F. App'x 211, 213 (11th Cir. 2007) ("According to our prior decisions and statements in Akins and Dodd, Paulcin's transfer to county jail and denial of access to his legal papers and the law library did not constitute extraordinary circumstances.") (citing Dodd, 365 F.3d 1273, and Akins v. United States, 204 F.3d 1086 (11th Cir. 2000)). Indeed, despite whatever difficulties Petitioner encountered from administrative segregation or being in transit, he was still able to file his Motion to Vacate. The § 2255 form instructed Petitioner not to cite any law, but to "[j]ust state the specific facts that support your claim." (E.g., Civ. Doc.

24

1 at 4). Considering that the allegation that counsel failed to file a requested appeal is straightforward, the fact that Petitioner was frequently in lockdown or in transit fails to explain why he could not have included a brief statement that counsel failed to file a requested appeal.[8] As such, the Court determines that Petitioner is not entitled to equitable tolling, and his objections to the magistrate judge's order are due to be overruled.

Having considered each of Petitioner's claims for relief, and having determined that each claim does not warrant relief, it is hereby

**ORDERED:**

1. Petitioner Shelton Thomas Bell's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. Petitioner's objection to the order granting in part and denying in part his motion for leave to amend (Civ. Doc. 22) is **OVERRULED**.

3. The Clerk shall enter judgment in favor of the United States and against Petitioner, and close the file.

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion.  28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue…

---

[8]     The Court again notes that Petitioner agreed to an appeal waiver as part of the Plea Agreement. (Crim. Doc. 38 at 8-9).

only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances. Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 27th day of December, 2018.

TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:
Counsel of record
Pro se petitioner

26